Good morning. May it please the Court, Eric Magnuson on behalf of DatabaseUSA and Vinod Gupta. This lawsuit started with a plethora of claims, 14 in all, through pre-trial motions, trial motions, post-trial motions. Twelve of those got whittled away because they didn't have any facts and they didn't have any law to support them. On appeal, we're left with two, copyright infringement and breach of a separation agreement. Those claims must fail as well. Facts may not be copyrighted. Compilations have thin protection under the copyright laws. And if you can't prove what was copyrighted, what was the creative element because you don't put your database into evidence, you haven't proven your case. Even if the other side prevents the comparison. Well, Your Honor, that's the second part. What I'm talking about isn't the comparison part. Well, is it the first part, counsel? Does it all make one sentence with a comma, even when the other side prevents it? Go ahead. The plaintiff has the burden of proving what the creative elements are in a compilation. The copyright certificate specifically excludes third-party data. There's no way for the jury, based on that certificate, to know what is the creative element in the compiled database. They're guessing. The only... Surely they had some help on this. They weren't completely guessing. Well, they had some help in the terms of... How much help did they have? They had help in terms of showing a comparison of factual contents. If you look at, I think it's Trial Exhibit 111, it's at page 178 of the appendix, it's got a sticker on it, Deposition Exhibit, you can see the fields that were compared. And the fields that were compared were all facts. Name, address, phone number, things like that. This case, this court in Schoolhouse and other circuits in numerous cases have said those facts are free for the taking. Well, if that's all they had, the jury still doesn't know what's the creative part of the copyright, because the certificate excludes third-party data. It says the copyright doesn't cover that. So are you saying then that the presumption does not apply here because of that? How does the presumption play out here in this case? The adverse inference? No, the presumption of validity, because there is a copyright registration. The presumption applies. There is a valid copyright. We just don't know of what. You don't know what element is there. If I could direct your attention to the Bell South case, almost the same facts. There was a copyright. It was admittedly valid. There was admitted elements were. There was no claim. You can't, if the jury is supposed to decide how did my client infringe on the creative elements, not the facts, we can copy the facts. If you don't show what the creative elements are by putting the copyright into evidence so the jury can somehow make an assessment of it, you failed in the initial issue that you have to prove. You have to prove what was creative, then you have to show copy. The adverse inference doesn't supply the first part. It, at best, only supplies the second part of the comparison. If you look at Airframe, General Universal Systems, and Antonik, they all say that the failure to put into evidence the copyrighted work is fatal. And they say that because it was creative. There can be no proof. Let's see. What about the seed data stuff and the other stuff? The seed data stuff is, it's made up facts. Now, wait, wait. When you say made up, we've had a jury trial at this point, as you well know. At this point of the game, we don't have made up facts. At this point, we have the facts favorable to the jury's verdict. Well, that's true, but the seeds by everyone's agreement were false facts. Oh, I'm sorry. You're referring to the bare naked facts. Right. They were false facts put in, but that is fairly common. In Bell South, the court said that's an en banc, 11th Circuit decision, that admitted copyright, admitted copying of facts, including intentional errors, was not infringement. Copyright protects creativity. It doesn't protect hard work. And at trial, Info Group said, we're creative in two ways. We're creative in the selection, and we're creative in the arrangement. And those are protected. Now, on appeal, they've abandoned the arrangement claim. At page 26 or 27 of their brief, they say that what we're claiming is unique selection. But they don't explain what they selected and never gave the jury a chance to assess. It's not like the key publications or experience. That should have been argued then. It was. That should have been the point of final argument. It was. And then the jury rejected the argument that the plaintiff failed to identify, explain, describe what Feist says the uniqueness is in a compilation. That's true, Your Honor. In an arrangement. But juries, when a jury reaches a verdict based on evidence that is insufficient, this court can and does reverse. That was the whole point of the Rule 50 motions. It should have been granted. If you look at Airframe, General Universal Systems, Antoinette, they all affirm judgment as a matter of law for the defendant. Stepping away from compilations to other copyright situations, the first one I encountered as a law clerk was the Dahl case. I suspect with the evidence of registration and no one contesting that the Dahl was not sure that you would have to have the Dahl into evidence in order to prevail in an infringement suit. How would the jury—well, true, but Dahls are not— I mean, the presumption in the absence of anything else, most Dahls are unique one way or another. Not all, obviously. But Dahls are clearly creative. They are not compilations. Compilations under Feist— So what you're saying is that compilations are unique in this requirement that you can't win if you don't put it in front of the jury. I don't know that they're unique, Your Honor, but the idea that you can't win your case unless you show the creative elements of a compilation follows directly from Feist, which says the only protection is the creative elements. And if you don't show the creative elements, actually show them to the jury, you don't get past the first step. I don't think that necessarily—I mean, it doesn't logically follow to me. I don't understand why the presentment, the presentation, and arrangement that is required for copywriting a compilation can't be described and subject to the defense, obviously, defeating the description or the notion that what is described is unique. Well, Your Honor, I direct your attention to the Antonin case, which addressed that very point. It said expert opinion describing the similarity is insufficient. What about an admission from the other side? We have arguably an admission by, I think it's Mr. Gupta himself, that USA Databases was Infogroups. Isn't that enough for the jury? Period. Your Honor, what he said was the data was the same. The reason the data is the same is they get it from the same sources. But let's give it every— Wait, did they say data or database? Do you remember which word it was? I don't remember which word. Okay, we'll find out. Go ahead. Make your point. Well, the point is you can take every piece of data that they published and copy it. Your case, Schoolhouse, says that. There has to be something creative and unique to be protected. If you put in the copyright certificate into evidence, that only says something's copyrighted. It doesn't say what. That's the presumption. And the adverse inference goes only to the copying element. It doesn't go to what is creative. And so when the juries asked, were the creative elements copied, they don't have any evidence. The only thing they've got is a factual comparison. They took seven out of 371 fields. They picked 13,797 records out of 15 million and said, see, there's a 95 percent overlap. That's page 178 of the appendix. And if you look at those fields— Does this claim to have statistical probability or something like that? Does it claim to have statistical probability, as you know, sampling sort of thing? Yeah, I think that their point is that we did an overlap comparison of the facts for you, and they also said we did it for Dun & Bradstreet. And look, you're way higher than Dun & Bradstreet. Well, if you look at the document— That's the adverse inference. If you try and prevent the comparison with the copy. Right, that's the adverse inference part of it, but that has to do with what would our evidence show. My point is, what does their evidence show? Okay, but I don't—and I still don't—as I understand this, I don't know if any of these annual databases were put into evidence, but apparently— They put in totals, snippets. All right, so you're saying that they lost the case because they didn't bury the jury in mountains of data? It's more subtle than that, Your Honor. The point is that they said at trial, it's selection and arrangement. Now, they've abandoned arrangement. If you look at our brief on page 53, you'll see why. Because they just don't look anywhere near. So at page 26, 27 of their brief, they've abandoned arrangement. So the only claim they've got now is selection. They say it was creative. But if you don't put your database into evidence and show what you selectively included, you haven't proven your case. And that's what distinguishes this from key publications and experience. Well, or excluded or modified over time. I thought that was what the point here was, why their database is valuable because it's updated, it's more focused. Pardon? It's updated. It's not more focused. What they say is we include every business that we can find. That is the antithesis of creativity. Why isn't the updating— It's just further verification of facts, which isn't protected. Well, I'm not sure I read Feist that restrictively. Well, it's not only Feist, it's Bell South, it is Warren, Enbach out of the 11th Circuit. Those aren't controlling. Well, Schoolhouse is the 8th Circuit. Well, Schoolhouse is an easy case. Okay. Your Honor, I need to move to the second issue, Mr. Gupta. Sure. And if you have questions, I'll get them hopefully on rebuttal. Under Nebraska law, if you sue for breach of contract, and it's like any other state, you have to prove your damages. Damages cannot be proven by speculation. If you only have speculation on damages, then Nebraska courts dismiss your claim. Here, the evidence of—the jury was instructed, this is Jury Instruction 17, on what's known as the expectation interest in breach of contract. You get the damages that are caused by the other side not living up to the agreement. Here, there were two claim breaches, disparagement and use of confidential information. There wasn't a single shred of evidence from their expert on the damages that flow. What about the executives of the company? Mr. Icarino said, I don't know, there's no science to it, maybe two and four, but there's no science to it. But he admitted he was speculating, and the jury didn't believe that. What the jury said was— I thought they said 10-2. Didn't one of the executives say 10 million-2? No. Hoffman, their damages expert, said 10. The question then was put to him, and he didn't say that on direct. He said it on cross, and the question was put to him. Okay, there's several parts to this contract, right? Right. And they all have value, right? Right. But how much value for the non-compete, which Mr. Gupta honored? I don't know. How much value for the disparagement? I don't know. How much value for the confidential information? I don't know. And then he said, I guess we paid 10 and we should get 10. That is what is known as a rescissionary measure of damages. That's not what the jury was instructed on. That is incompetent evidence. It doesn't support a verdict. Period. End of discussion. If you've got theory A and your only evidence is on theory B, you lose, and that's what should happen here. I think I am at my rebuttal time, and I'd like to save it. Thank you very much. Thank you. Mr. Scaglione, did I say that right? Yes, thank you.  This is Greg Scaglione and Elizabeth Hoffman, appearing on behalf of the Appley Info Group. May it please the Court, I've asked for a warning of eight minutes of my time left. I'd like to address the issues counsel just addressed, but I believe that a lens of the review is important to review. I know the Court practically has it memorized. But it is, for a new trial, virtually unassailable on appeal, is what this Court has said. We should avoid a miscarriage of justice. We're not here to reweigh the evidence. The Article III judge did trim almost $43 million off the verdicts. I'd say that's avoiding a miscarriage of justice. Judgment is a matter of law, taking everything most favorable. I'd like to emphasize this. It's not only the conflict of evidence, but it's also the conflict of interpretations of the agreements. You'll see that we have competing interpretations of the nondisparagement and the use during a legal proceeding is making a press release or a statement to a reporter a statement made during a legal proceeding. They have a competing, I think, unreasonable interpretation. Well, interpretation of a contract is a question of law, even in the middle of a jury trial. I agree, and they have not assigned that as error. Judge Girard decided the proper interpretation of that contract, both as to the confidential information as well as the nondisparagement. He instructed the jury. They have not objected to the jury instructions, and they have not assigned any question of law, interpretation of contract, jury instructions as error. So what we have here to offset the sole insufficiency of the evidence, assignments of error are the following. Statutory presumption of validity of the copyright. Statutory presumption of lost profits will equal the gross revenue, and it's up to them to come up with deductions, although I put two deductions in the record form. A permissible adverse inference. Two insider whistleblowers who blew the whistle on Mr. Gupta and Database USA, one of which was their national sales representative, who was also a top exec at our firm. We have an extensive record created over a week, and Mr. Gupta, who sat through the entire trial and heard evidence of his admissions over and over again, who sat through the entire trial at counsel table and never took to stand. This is a civil case, right? That's correct. Okay, proceed. Mr. Vakili, who was present in the gallery for at least half of the trial, never took to stand to rebut what the whistleblower said. So then 12 jurors and a very attentive Article III judge, who wrote over a 50-page opinion and took excellent notes at trial, did not differ on the facts. And the question you have to reach is could reasonable people differ on these facts? Thirteen did not. And again, on the miscarriage of justice, they did get the benefit of $43 million cut off of their liability. So I do want to address the issue of what is copyrighted. I believe that if you have a registered copyright that comes with a presumption that whatever was copyrighted is valid. That presumption is permissive and it can be overcome by contrary evidence. I do not believe you have to put the work into evidence. It may not be very persuasive to not do that, and you certainly may need to do it to prove infringement. But just to get to a valid copyright. Has any case discussed the presumption of validity where Feist applies? I'm sorry, Your Honor. What was the question again? Compilation case where the face of the document, like a book, is not subject to copyright. Only if there is creativity within the work itself, not apparent on the face of the work. Has any case discussed how the presumption of validity applies? I don't know that we found a case that specifically answers the question if you put nothing in, is the presumption sufficient? But we went beyond nothing, and I'd like to identify the case. Well, what have they discussed then? Which circuit court case do I read to find the words presumption of validity in a compilation copyright case? Well, I think it's broader than that. The copyright law says if the trigger... But the answer is none? I don't think with that particularity, no, but I believe the statute answers your question, not a case. All right. That's argument. I'm trying to get at how do I research your rather extravagantly broad assertion that the presumption of validity covers this case after I've read Feist and the limitations on the validity of compilation works? Well, certainly we cited Experian, and I believe the trial judge also cited an Eighth Circuit case that gets into creativity, and that's what takes us into a question. I don't remember any of those three cases discussing the presumption of validity. That's the only thing I'm worried about. I can figure out after more careful study of the record what you presented and whether if I was a juror would I think that showed creativity or does it have to show that to the judge. But you said don't worry about that. I've got the presumption of validity, and I'm just saying what's your case law support for that? I cannot cite you a case. I can only cite you a statute that says anything that is copyrighted, anything that is copyrighted comes with a presumption of validity. That's the federal statute. And that was written before Feist, right? And it's still in effect. I don't know that it's been modified. But I have more than the presumption of validity. It has to be applied. Correct, and I'd like to apply it now. You're arguing we should apply it now, but okay. That's fine to argue it. I always like to find out from the lawyers how much support do you have for an assertion that's the broadest interpretation of my position, and now I find out after too much back and forth, none. What I would suggest, Your Honor, is the question is not fully before you because the jury was instructed on the presumption of validity based on registration. They did not object or appeal it. You can have fallback, narrower arguments. That's quite appropriate. So it's not before you. They didn't say the judge should not have instructed on presumption here. They did not object to that, and they did not appeal that argument. You're saying the presumption trumps their insufficient evidence argument. In part. In part. We have the presumption plus evidence. I got it. So if we start with the presumption of validity, what did I add to that? Here's what I added. Number one, on creativity, it's not a matter. I agree with counsel. Sweat of brow is not appropriate. That's where someone very diligently goes out and finds facts and copies and pastes them into the database. There's no element of creativity. It's just a lot of effort, and you may even have to pay for the data. That's not what we did. What we did is the first thing we did at Exhibit 121 is we identified the categories of fact that we think the market finds attractive, and we found that there was 371 categories of data that the market would not only find attractive, but they would pay for. That's like how many communities do I put in my white pages? It's not a quantitative number, Your Honor. It is what are the facts. For example, do people want to know the legal name of a company or the shortened name? Do they want to know how much revenue a company earns? Do they want to know the square footage of their lease? We make business judgments on what businesses may want to know. So then we create the fields. It's like white page publishers have to decide should I stick to just the local area code or should I include a standard statistical marketing area and so forth. So that's the first thing we do creatively. That's not selection and arrangement under Feist, is it? Well, it's the first start of it. We decide what facts are attractive to the market. That is judgment and creativity. Then we get conflicting facts from multiple sources, and we have to make judgments on which facts. Okay, now you're getting what I would say is a distinction from white pages. So tell me, what witnesses should I read on that point? Mike Icarino, Amit Khanna. They testified that we take conflicting facts and we make judgments on what are the most helpful and accurate facts. In addition, we fill in gaps where there are no facts. What's the second one? Amit Khanna. The other thing we do that is creative is there are gaps in these 371 fields. There are gaps where no facts exist, and we create models and projections. So, for example, we may say this dentist's office, based on our decades of experience, has this many square footage of leaf space, they have this many employees, and we believe their gross revenue is X. That is no fact at all. That is our modeling projections based on our expertise and experience. So those are created facts. Then we have the seeds. There's not a single fact in a seed. A seed is a fictitious business record that we create to monitor cheaters. So what happens is we – The seeds are the copyright claim? Well, they're creative. They're not fact. We created that information, and we have to create it in a way that will not be caught by infringers. So we create a fictitious company at a fictitious address, and we arrange it in a way that it will not alert an infringer that it's a seed. The defense against a compilation infringer is the creativity that FICE requires? I'm sorry. That's standing creativity, my notion of copyright creativity, on its ear. I don't agree, Your Honor. What the cases that say is not copyrighted is simply finding a fact and copying and pasting it in. We did not do that. We found 20 statements of what is believed to be fact, and we made selection and judgment to bring it – Let's get to the – I understand your position. Let's get to the question of how you proved that they infringed the creativity and the work that was not before the jury. Okay. So there are several points on that, Your Honor. One would be, obviously, the adverse inference, which was permissive at Instruction 14 alone is sufficient to support that point, but we went well beyond that. We had three comparisons done, and the overlap percentage is important to note here because the overlap percentage shows uniqueness. Our main competitor is Dun & Bradstreet. Dun & Bradstreet, we did a comparison of our database and their database. It was a little over 50% the same. And in particular, that means their database is 45% unique. Why? Because they make unique selections and judgment themselves. This person qualified as an expert who's testified to this? They didn't object to his qualification. No, I'm sorry. It's a simple question. Yes. Is this person an expert? He's an expert. Is this expert or another way? He had expertise in that area. Okay. Go ahead. Proceed. And so that shows uniqueness. Then we put into evidence a client of ours, Axiom, who purchased our entire database, and we compared it to theirs. There was 95% overlap. So they had 5% where they purchased some additional data on their own. We then did a comparison, 93%. I'm sorry. Database USA's was 95% overlap. That is showing that the uniqueness in the market with Dun & Bradstreet was 45%. They were at a 95% overlap. That shows an element of uniqueness as well. Were the comparisons based on the same quantity of data? It was based on a sample that we deemed sufficient. They did not object, move to strike, or assign as error on appeal. So the sample is pretty much the same for each one of these comparators? Yes. And so we put that forward. That was not contested. Certainly this kind of blends a little bit with infringement, but finding all of our seeds, every one of them in their database, is very damning as well. It shows a lack of uniqueness on theirs, specific uniqueness on ours, and then the copyright as well. So I believe with that, then we get to the direct evidence of the admissions, which we have this insider who testified that the managers, or Fred Vakili and Vin Gupta, took our database, and then when they got it over there, they then updated it with clandestine license of our Sales Genie license. And they would have the Sales Rep, Mr. Van Gilder, use his credit card so that we couldn't catch that it was Database USA and use a fictitious name to license Sales Genie. Sales Genie would then upload our data, update it, they would blend that with their database, and that's how they kept their database updated. And that went from the time they came over all the way through. And then when you consider when we find, they used their database to defeat our preliminary injunction. This was after the suit was filed. We brought a preliminary injunction. They used their database to defeat it. Then when we head to trial, and we are preparing to have a court-appointed expert. We're deep into the case. We're having a court-appointed expert compare both, and they say, fine, let's do it. So then we do a database deposition of Mr. Gupta and Mr. Khanna to set up the protocols that we're going to hand to the court-appointed expert. And then on the eve of that, well, we don't have our database. After they used it to defeat the preliminary injunction, they defeated it not before case, but during the case, and after they used it for their advantage. So I'd like to comment briefly on Mr. Gupta's judgment, if I may. There were two breaches that we identified there of the non-disparagement and the non-confidentiality portion of the agreement, and I understand counsel is focused on the damages. What we have there are really evidentiary questions. What he was saying is the evidence from Mr. Icarino and the evidence from Mr. Hoffman are, they should have been excluded from evidence. No, he just says they're speculative. You can get them in, but they're speculation. Get it? So you'd help me a lot. Is there a Nebraska case that looks like this one? In some of our states, we have a lot of damages cases, and you can find one that kind of looks like this one. Is there a Nebraska case that looks like this one? There is a Nebraska case where a party is asked, what is the value of this contractual term to you? And Mr. Icarino said $2 million to $4 million, and Mr. Hoffman said $10 million. Is that case in your brief? I don't know that it is. Okay. But the point is that testimony came in. They testified on what they believed the value was. Judge Gerard then analyzed it, and he also found what I argue to the jury is that the parties at an arm's length transaction already placed a value. It's like purchase of real estate. But there were different parts to this contract, correct? That's correct. So that it's almost then an all or none, I think is the argument, is that if you don't have a value to each portion, it doesn't really make a lot of sense. So what we did, if you look in our brief, Your Honor, and I know you have, is we identified the other consideration points. So they want to call it rescission. This was not rescission. One of the most substantial pieces of consideration that Mr. Gupta received was the indemnification for his unlawful conduct that the SEC issued a consent order on. And there was orders that resulted in found misconduct, which resulted in multiple class action cases. It also resulted in lots of trouble with the IRS. We paid, and this is in the evidence, over $15 million for the tax misconduct that he brought on the company. And we agreed in that agreement not to not only not seek that advancement from him, but to defend him. And we did defend him in those class action cases. We didn't ask for any of that to be rescinded. And Mr. Icorino put that number in excess of $15 million. So he got to keep the $15 million of benefit. He got to keep the health and dental benefits for him and his family. He got to keep several other items that were listed there. The only item that they brought up that they said there wasn't a value on was a non-compete, that you didn't put a value on the non-compete. Mr. Icorino did. He said after this consent order entered by the SEC, he was not going to be a threat to us in competition. When was that order entered by the SEC? It's in the record, Your Honor. I don't have it committed. Was it not after this? No, it was before. It was before? It was before he left in 2008 is when the trouble started hitting. And he had to leave the board. Part of the SEC order was a management director bar. So that's why he departed the company. Counsel, when we look at the jury's instruction, I think it's number 17, what theory of damages was submitted to the jury? Would you say it would be the fair assessment under Nebraska law? Yes. They have standard instructions, I bet, on that. What theory was it? The theory was make info group whole. What would make them whole from your breach of the confidential information using our trademarks, where he's saying I'm the guy on 2020, I've had this database since 1972, and I can sell it to you at Database USA. So he used our trademarks. And also the false associations he made to our company and the disparaging comments. We said make us whole. And we said he can keep the $15 million tax fraud, this and the other. We want the $10 million back. And you understand what I was asking about what the instruction says. You said that's what the instruction to the jury says. The instruction says make info group whole. Thank you. And is it anticipated at the time of the contract to flow? Thank you. Thank you. Thank you, Counsel. Thank you. Mr. Magnuson for rebuttal. Judge Benton, you asked for a Nebraska case. Lange, cited in our brief, says this. It is a basic concept that any damage action for breach of contract, the claimant must prove that the breach of contract complained of was the proximate cause of the alleged damages. There must be a causal relationship between the damages asserted and the breach relied upon. Proof which leaves this issue in the realm of speculation and conjecture is insufficient to support a judgment. Thank you. Of course, you and I know proximate can mean about anything. But go ahead with your argument. The instruction. Do you have a closer Nebraska case that looks kind of like this? That's pretty close, Your Honor. No, no, no. You know what? Proceed with your argument. Well, I do have your case, the Eighth Circuit case, Storage Tech, which affirms summary judgment. It says when the record contains only speculation on damages, the defendant is titled. It's not Nebraska law, is it? It's Minnesota law, but I don't know that there's any difference. Okay. Proceed. The point is this. What did they say? I don't know. I don't know. They asked their expert, Hoffman, what's the value of this? I don't know. What's the value of this? I don't know. What's the value of that? I don't know. And in the end he said, I guess we paid 10, we should get 10. That is, if you look at the Entergy case that they cite, it has a long discussion of the restatement of contracts. There are three elements under the restatement of contracts. There's expectation damages, which is what Instruction 17 is. There is something called reliance damages, which is if I make a contract with you and I've got to go buy a bunch of stuff to fulfill the contract and then you bail, I get to recover the expenses I incurred. And then there's restitution, which is if I got a benefit I shouldn't have gotten, I have to give it back. They didn't ask for the other two, but that's the only basis for their claim now on appeal. That is, as a matter of law, insufficient. If we were in Nebraska, the judgment would be vacated. I want to talk again about the copyright. If you look at, and I just really hope that you'll have time to dig out trial Exhibit 111, it's at page 178. And what it shows is how they calculated the overlap. They said, here are the fields that overlap. And here's this Dun & Bradstreet stuff he was talking about. And at the bottom it says 59.3% overlap for Dun & Bradstreet, 95% for database. They say, see, that shows that we substantially verbatim copied. But it's all facts. It's company name and address. And what you see is there are zeros for Dun & Bradstreet because they don't put in phone numbers. The determination of what is the most accurate phone number or the most accurate address is simply not creative. And if you look at their brief at page 27 and 28, thus the data that InfoGroup chooses to include in its database, this is their selection argument, represents InfoGroup's judgment as to the most accurate information as to the businesses. Feist, Schoolhouse, all the cases we cite say, look, digging stuff out and making sure it's accurate is simply not creative. What about their modeling argument? Their best argument is we model some of the stuff. And they do every time you look at the Internet, not them personally, but I mean all these people do estimates out there. Why would anybody assess that when they don't put their model into evidence? It would be like saying, I didn't put the doll into evidence, but I'm telling you, it looks a lot like that doll. That was the whole point of my initial argument. If you don't make the predicate step, the presumption that there's a valid copyright, I don't have a quarrel with that. Copyright of what? You have to put it in so the jury can see, well, what is creative? Because the certificate itself says we don't cover third-party data. And that is precisely the analysis in Bell South, in Airframe, in General Universal Systems, and ANTONIC. And you ask counsel if he had cases, I've got cases. I trust you'll read them. I know you'll give it careful consideration. You should reverse both judgments. You should remand with instructions to enter judgment in favor of the defendants. Thank you very much. Thank you, counsel.